# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| NEARSTAR, INC. | § | |
| | § | |
| v. | § | |
| | § | |
| JASON WAGGONER and | § | CASE NO. 4:09cv218 |
| WAGGONER INDUSTRIES, LLC | § | (Judge Mazzant) |
| | § | |
| v. | § | |
| | § | |
| WILLIAM SANDERS and | § | |
| CHRIS PARKER | § | |

## MEMORADUM OPINION AND ORDER

Pending before the Court is Plaintiff and Third Party Defendants' Motion for Partial Summary Judgment Against Defendants' Counterclaims and Third Party Claims Relating to Dataserver (Dkt. #195). Having considered the relevant pleadings, the Court denies the motion in part and grants the motion in part.

## BACKGROUND

Jason Waggoner ("Waggoner"), William Sanders ("Sanders"), and Chris Parker ("Parker") were officers and joint shareholders of Nearstar, Inc. ("Nearstar"). On January 26, 2009, Waggoner gave notice of his intent to resign from the company. After leaving Nearstar, Waggoner sought to deny Nearstar any right to continue to use, modify, or license Dataserver. Nearstar later sued Waggoner for various claims, including breach of contract and copyright infringement.

Waggoner then sued, alleging, among other claims, copyright infringement relating to Nearstar's use of Dataserver. Waggoner claims that Dataserver is based almost entirely upon the original work of Waggoner who performed this work in the 1990s prior to the creation of Nearstar. Waggoner also asserts that all derivative works used by Nearstar infringe upon Waggoner's original work. Although Nearstar disputes Waggoner's assertion of authorship and/or ownership of any

portion of the computer program Dataserver, Nearstar does, for purposes of this motion, proceed as if these assertions are true.

Dataserver has been Nearstar's most profitable computer program and nearly every Nearstar customer has a licensed copy of it. Between December 21, 2000, and March 13, 2009, Nearstar developed numerous enhancements for Dataserver and licensed several versions of Dataserver, including versions 3.2, 4.0, 5.0, 6.0, and 6.2, as well as numerous interim releases. Waggoner also confirms that he granted Nearstar permission to copy, distribute, market, and sell Dataserver, as well as modify the source code for Dataserver. Waggoner also testified that none of the permissions that he granted Nearstar relating to Dataserver were ever memorialized in writing or verbalized. Rather, Waggoner testified in his deposition that the permissions that he granted relating to Dataserver arose from an unspoken agreement. During the ten years that Waggoner was with Nearstar, Nearstar employees made bug fixes and enhancements to the source code for Dataserver. Waggoner testified during his deposition that he gave Nearstar permission to make those modifications and enhancements. Waggoner supervised Nearstar employees who performed quality assurance roles, debugging releases, installation roles, and programming series relating to Dataserver. Waggoner testified that he never placed any limits or restrictions on Nearstar's rights relating to Dataserver, although what permissions and restrictions could have been imposed were never discussed.

Waggoner co-authored the Nearstar Employee Policies Manual, which requires each employee to represent that he/she shall "disclose in writing all discoveries, inventions, and improvements conceived by me or with others during the course of my work at Nearstar" and "Nearstar shall be free to use any such discoveries, inventions, or ideas without obligation of any sort," and "[i]f patents or other intangible rights should result therefrom, I agree that all such rights shall be the sole property of Nearstar." Each employee was further required to represent that he/she

"will cooperate fully in signing documents to transfer and perfect full rights, title, and interest to and for Nearstar."

On November 15, 2010, Plaintiff and Third Party Defendants filed their motion for partial summary judgment (Dkt. #195). On December 10, 2010, Defendants filed their response (Dkt. #202). On December 28, 2010, Plaintiff and Third Party Defendants filed their reply (Dkt. #208). On January 8, 2011, Defendants filed a sur-reply (Dkt. #213).

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. at 256. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there

is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## ANALYSIS

Now that Waggoner has left Nearstar, he asserts a claim for copyright infringement against Plaintiff and asserts a claim for fraud on the United States Copyright Office.[1] Nearstar asserts that Waggoner granted Nearstar a license to copy, modify, sell, distribute, and use Dataserver without any restriction or limitation, which would be an absolute defense against copyright infringement. Nearstar argues that at the very least, Waggoner granted Nearstar an unlimited, irrevocable license to use, modify, and sell Dataserver.

The parties agree that the existence of a license is a defense to a claim for copyright infringement. *CMS Software Design Sys., Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir. 1986). The Copyright Act requires that exclusive licenses be evidenced in writing. 17 U.S.C. §§ 101, 204(a).[2] "While the Copyright Act requires that exclusive licenses be evidenced by a writing, no such writing requirement applies to nonexclusive licenses." *Lulirama Ltd., Inc. v. Axcess Broadcast Serv., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997). Thus, "'[u]nder federal law, a nonexclusive license may be granted orally, or may even be implied from conduct.'" *Id.* (citation omitted). "'When the totality of the parties' conduct indicates an intent to grant such permission,

---

[1] The parties agree that there is no claim for fraud on the Copyright Office and that this counterclaim should be dismissed.

[2] Section 204(a) of the Act provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Section 101 of the Act defines "transfer of copyright ownership" to include exclusive licenses, but expressly excludes nonexclusive licenses. *See id.* § 101.

the result is a legal nonexclusive license....'" *Id.* (citation omitted).

An implied nonexclusive license arises when the following occurs: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* (citation omitted). A nonexclusive license may be irrevocable if supported by consideration. *Id.* at 882. The burden is on the alleged infringer to prove the existence of the license. *See Tasini v. New York Times Co.*, 206 F.3d 161, 171 (2nd Cir. 2000).

Nearstar asserts that Waggoner admits that he granted Nearstar a license to do all the things relating to Dataserver that he now says are unlawful, and for ten years Nearstar created and derived works based upon an original version of Dataserver. Nearstar relies on the fact that Waggoner never placed any restrictions on Nearstar's use of Dataserver and in fact encouraged Nearstar to do exactly what he now alleges is unlawful.

Waggoner asserts that courts only find implied licenses in very narrow circumstances where one party created a work at the other's request and handed it over, intending that the other party copy and distribute it. Waggoner asserts that Nearstar offers no evidence that Nearstar requested that Waggoner create Dataserver, because Dataserver was created before Nearstar was even in existence. The Court agrees that there is no evidence that Nearstar requested creation of Dataserver and there is no evidence submitted that Waggoner created Dataserver for Nearstar and delivered it to Nearstar. Waggoner argues that Dataserver was created by him and his brother before Nearstar was formed. However, there is evidence that Waggoner intended Nearstar to copy and distribute Dataserver. Waggoner also asserts that even if there was an implied license, it was revocable, because no consideration was given. Waggoner argues that there is no evidence that Nearstar gave him any consideration for a license to use Dataserver. Although Waggoner was an officer and director of

5

Nearstar and he received a salary and distributions, as did Parker and Sanders, Waggoner asserts that Nearstar cannot claim that the regular compensation as an owner/employee of Nearstar constituted consideration for an implied licensee to use Dataserver.

The Court agrees that even if there was an implied license, Nearstar has failed to offer sufficient summary judgment evidence to establish as a matter of law that Waggoner received consideration to support an irrevocable license. Continued at-will employment does not constitute sufficient consideration to support an irrevocable license. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 452 (5th Cir. 2003).

Nearstar responds that Waggoner ignores the fact that he has already admitted that he granted Nearstar a license to do all of the things relating to Dataserver that he now says are unlawful. However, there is no written license agreement, and the question of Waggoner orally granting a license is a question of fact.

Nearstar also asserts that Waggoner was paid consideration for the licensing of Dataserver. Waggoner correctly argues that Nearstar does not present evidence that Waggoner was compensated specifically for the Dataserver license. Therefore, Nearstar has failed to establish that it is entitled to summary judgment on a license theory as a matter of law.

For the first time, in their Reply, Nearstar asserts that the holding in *Carson* reinforces Nearstar's right to summary judgment under a theory of equitable estoppel. Nearstar argues that Waggoner admitted that he actually knew that Nearstar was licensing Dataserver to its customers for profit and that he gave Nearstar unlimited permission to copy, distribute, modify, and license Dataserver to Nearstar's customers. Waggoner encouraged and assisted Nearstar in licensing Dataserver to Nearstar's customers by either personally assigning or otherwise consenting to numerous license agreements such as the Nearstar-ASE Reseller License and Support Agreement,

6

the Nearstar-Xerox Value Added Reseller Agreement, and the Non-Disclosure Software Trial Agreement.

Waggoner objects to Nearstar's improper attempt to obtain summary judgment on a ground which was not raised in its original motion. The Court agrees and does not condone new grounds being raised in a reply brief. From a procedural standpoint, Nearstar is seeking summary judgment on a ground not raised in their motion, presented instead for the first time in the reply brief, neither of which is permissible. *See John Deere Co. v. American Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987); *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990).

Even if the Court did address this theory on the merits, it would likely deny summary judgment. "Although there is no on-point circuit authority articulating the elements of estoppel as a defense to a copyright infringement allegation, a consensus has developed that a copyright defendant must prove four conjunctive elements to establish estoppel in such cases: (1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury." *Carson*, 344 F.3d at 452(citation omitted).

Although estoppel may be a valid bar to Waggoner's claim, the Court finds that a fact issue would remain that would prevent summary judgment. Nearstar cites no cases, and the Court cannot find any, that involve a copyright plaintiff who was a director and officer of the corporation sued for infringement. After review of the evidence, the Court finds that a fact issue remains on whether Waggoner can be estopped from asserting a claim of copyright infringement.

## CONCLUSION

The Court hereby GRANTS in part Plaintiff and Third Party Defendants' Motion for Partial Summary Judgment Against Defendants' Counterclaims and Third Party Claims Relating to Dataserver (Dkt. #195) and DISMISSES any claim for fraud on the United States Copyright Office. The remainder of the motion is DENIED.

**SIGNED this 2nd day of March, 2011.**


_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE